IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTINE MONEY,

        Plaintiff,                                     CV-05-6309-PK

        v.                                            FINDINGS AND
                                                       RECOMMENDATION
JO ANNE B. BARNHART, Commissioner of Social
Security,

                Defendant.

**KATHRYN TASSINARI**
**ROBERT BARON**
Cram, Harder, Wells & Baron
474 Willamette, Suite 200
Eugene, OR 97401

       Attorneys for plaintiff

**KARIN J. IMMERGUT**
United States Attorney
**NEIL J. EVANS**
Assistant United States Attorney
1000 SW Third Ave, Suite 600
Portland, Oregon 97204

1 - FINDINGS AND RECOMMENDATION

**JOANNE E. DANTONIO**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Ave, Suite 2900 M/S 901
Seattle, Washington 98104

    Attorneys for defendant

PAPAK, Magistrate Judge:

## INTRODUCTION

Plaintiff Christine Money (Money) brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits (DIB) and supplemental security income payments (SSI) under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

The Commissioner moves the court to remand for further proceedings to correct errors in her decision (docket # 19). Money opposes additional proceedings and seeks a remand for an immediate award of benefits. The Commissioner's motion to remand for further proceedings should be granted.

## BACKGROUND

Money was born September 1, 1962. She attended school through the eighth grade and later obtained a high school equivalency diploma. Money worked at fast-food restaurants, a chicken packaging plant, and as a housekeeper at a nursing home and at a motel. She last worked full-time as a maintenance worker at Burger King until being laid off in September 2001 due to lack of work.

Money alleges disability based on heart disease and high blood pressure, which cause chest pain, lightheadedness, shakiness, and absenteeism to accommodate frequent medical appointments. She alleges that she became unable to work on September 14, 2001.

The Commissioner first denied Money's concurrent applications in March 2003. This court remanded that decision on June 16, 2004. In addition to other errors which do not pertain to the present appeal, the court found that the ALJ's reasons for rejecting the opinions of Dawn Bost, M.D., and Dierdre Hanna Pepper, PMHNP, and for discrediting the statements of Money and her husband, were not supported by substantial evidence. The court remanded for corrective proceedings to permit the ALJ to reevaluate this evidence. Tr. 801-32.[1]

On July 28, 2005, after conducting further proceedings, the ALJ issued a written decision after remand, again denying Money's concurrent applications. That decision is now before the court on appeal.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner uses a sequential process of up to five steps for determining whether a person is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. Money challenges the ALJ's evaluation of the evidence and conclusion at the fifth step of the process.

---

[1]Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer (docket # 9).

3 - FINDINGS AND RECOMMENDATION

For the purposes of step five, the Commissioner must first assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can do on a regular and continuing basis, despite the limitations imposed by her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p.

In the proceedings after remand, the ALJ found that the combined effects of heart disease, carpal tunnel syndrome, irritable bowel syndrome, chronic obstructive pulmonary disorder, a depressive disorder and symptoms of post traumatic stress disorder significantly affect Money's ability to perform basic work-related activities. The ALJ assessed Money's RFC as follows:

> The claimant retains the residual functional capacity to perform a reduced range of sedentary exertional level work. She requires simple, routine tasks. She is precluded from exposure to extremes of cold. Hazardous work settings are precluded where a lapse in attention due to the need to take a nitroglycerine pill would present a danger. The claimant requires restroom access. Standing is limited to 10 minutes every 2 hours. Prolonged typing and prolonged telephone activity is precluded based on the possibility of carpal tunnel syndrome, although this limitation would probably be eliminated by treatment.

Tr. 786.

If the adjudication reaches step five, the Commissioner must determine whether the claimant can perform work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). Here the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 U.S. at 141-42; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the Commissioner meets this burden, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

In her decision after remand, the ALJ found that there are a significant number of jobs in the national economy that a person with Money's age, education, work experience and RFC could

4 - FINDINGS AND RECOMMENDATION

perform. She drew examples of such jobs from the testimony of a vocational expert (VE), including work as a printed circuit board touch-up screener, surveillance system monitor and hand mounter. Tr. 787-88. The ALJ concluded that Money is not disabled within the meaning of the Social Security Act.

## STANDARDS

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.), *cert. denied*, 531 U.S. 1038 (2000). Generally, when a court reverses an administrative decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) quoting *INS v. Ventura*, 537 U.S. 12, 16 (2002) and *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985); *Moisa v. Barnhart,* 367 F.3d 882, 886-87 (9th Cir. 2004).

The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir. 1989).

## DISCUSSION

Money contends the ALJ improperly discredited her testimony and that of her husband, rejected the medical opinions of Dr. Bost and Michael Moser, M.D., and discounted the opinion of nurse practitioner Pepper. She contends these errors led the ALJ to elicit testimony from the VE based on hypothetical vocational limitations that did not accurately reflect her functional limitations.

The Commissioner admits that the ALJ failed to properly evaluate the opinions of Dr. Bost

5 - FINDINGS AND RECOMMENDATION

and nurse practitioner Pepper. She also concedes that some of the ALJ's reasons for discrediting the statements of Money and her husband were improper. As described previously, these are the same errors identified in the court's opinion remanding the first decision. The Commissioner does not concede the other errors Money asserts and contends the ALJ's errors do not justify an immediate award of benefits.

Accordingly, the parties agree that the case must be remanded but dispute whether the Commissioner should be permitted to correct her errors in further administrative proceedings.

### I.     Dr. Bost's Opinion

Dr. Bost was Money's primary care physician at South Lane Medical Group from January 7, 2002, until about June 7, 2004. During 2002, she provided routine health care and treated Money for a variety of ailments, including gastroesophogeal reflux disease, an elbow contusion from a fall, pelvic pain, a puncture wound from stepping on a nail, hip pain and fatigue attributed to subclinical hypothyroidism. She was aware that Money received cardiology treatment from others.

Dr. Bost's physical examinations were generally benign and her mental status examinations indicated that Money was alert and oriented with appropriate mood and affect. Nonetheless, on October 9, 2002, Dr. Bost wrote the following letter:

> To Whom it May Concern:
>
> The patient is a patient of mine and has multiple health problems, which prohibit her from working. She has heart disease with recurrent chest pain and shortness of breath, which is disabling.

Tr. 688.

The Commissioner concedes that the ALJ did not properly consider this disability opinion and the court will not revisit that issue. Instead, the court must decide whether the Commissioner's

6 - FINDINGS AND RECOMMENDATION

failure to properly evaluate Dr. Bost's opinion in the two previous administrative decisions should preclude further corrective proceedings.

When an ALJ fails to properly evaluate a medical opinion, the court has discretion to credit the findings and opinions as a matter of law in appropriate circumstances. *Hammock v. Bowen*, 879 F.2d 498, 503 (9th Cir. 1989); *Benecke v. Barnhart*, 379 F.3d at 594. Crediting Dr. Bost's disability letter is problematic in the present circumstances, because Dr. Bost did not include supporting medical findings and because her vocational opinion is inconsistent with the opinions of other physicians.

The question of whether a claimant is employable is not a medical opinion about specific functional limitations, but an administrative finding that the regulations reserve to the Commissioner. Medical opinions are statements from acceptable medical sources that reflect their judgment about the nature and severity of a medical condition, including the physical or mental restrictions it causes and what activities it precludes. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Medical opinions include statements from acceptable medical sources about a claimant's "physical or mental abilities to perform work-related activities." SSR 96-5p.

Dr. Bost's disability letter does not identify work-related activities that Money cannot do. It simply states the bare vocational conclusions that unidentified health conditions "prohibit her from working" and that her heart disease "is disabling." Opinions on issues reserved to the Commissioner cannot be given controlling weight or special significance, even when offered by a treating physician. 20 C.F.R. §§ 404.1527(e), 416.927(e); SSR 96-5p.

The record reflects that after writing her disability letter, Dr. Bost came to believe that Money's chest pain was not related to her cardiac condition. Tr. 869. Money reported only

occasional chest pain and infrequent shortness of breath, even without medication compliance. Accordingly, it is unclear whether Dr. Bost altered her opinion or whether Money's condition changed.

Furthermore, crediting Dr. Bost's disability letter is troublesome because to do so would require the court to reject the findings and opinions of other medical sources who treated and examined Money and reached contrary conclusions. For example, Michael Moser, M.D., was Money's primary care physician after Dr. Bost and opined that Money could do a limited range of sedentary work. Tr. 904, 906-07. Robert Bender, M.D., performed a cardiac disability examination and opined only that Money's exercise intolerance would preclude manual labor. Tr. 498. Richard Romm, M.D., provided Money's cardiology treatment during the relevant time and repeatedly found her hemodynamic function to be within normal limits. The only restriction he imposed on Money's activities was that she should stop smoking.

Money contends that Dr. Bost's opinion supports an immediate award of benefits under the so-called *Harman* test. Under *Harman*, the court should direct an immediate award of benefits when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting probative evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Harman v. Apfel*, 211 F.3d at 1178 citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

Even if Dr. Bost's disability letter were credited as a matter of law, it would not resolve all issues or make it clear that the ALJ would be required to find Money disabled. To establish disability, Money must show a disabling level of severity persisting for a continuous period of 12

8 - FINDINGS AND RECOMMENDATION

months. Dr. Bost's disability letter does not purport to establish the duration requirement. Her later findings suggest that her opinion did not reflect a stable or permanent condition. For example, in April 2004, Dr. Bost felt Money's chest pain was related to neck pain or stress rather than a long-term cardiac condition. Tr. 867-69.

Dr. Bost's disability letter does not resolve the conflict with Dr. Moser's contradictory conclusion that Money can perform some kinds of sedentary work. Dr. Moser is equally well equipped by training and information to understand Money's medical condition. The prophylactic purposes of the crediting as true rule do not suggest that it should be applied in a manner that requires the court to discredit or disregard other probative evidence. Accordingly, it is unclear that Dr. Bost's opinion should be credited under the so-called *Harman* rule.

Under these circumstances, it would be an inappropriate exercise of discretion to credit Dr. Bost's disability letter as a matter of law. Instead, the proper course is to remand to the agency for additional explanation of how it resolves the various medical findings in context with the record as a whole. *Benecke v. Barnhart*, 379 F.3d at 595.

## II. Dr. Moser's Opinion

Money established care with Dr. Moser on November 18, 2004, after Dr. Bost left the South Lane Medical Group. His physical examination was generally benign. Laboratory tests showed abnormal thyroid hormones and high cholesterol, which prompted Dr. Moser to recommend a follow-up cardiology evaluation by Dr. Romm. Tr. 859-61, 890.

There is no record that Dr. Moser examined Money again before providing the following statement on March 24, 2005:

> It is my medical opinion that patient is disabled in reference to her medical problems, and the likelihood of her obtaining gainful

>employment is minimal. Patient may perform a modified sedentary work where she can only stand ten minutes every two hours and walk ten minutes every two hours. Due to her underlying chronic obstructive pulmonary disease, shortness of breath, and progressive coronary artery disease with documented angina, it is unlikely she could do anything more than sedentary work.
>
>It would be in the best interests of the patient's future health that she continue with her current medical care and refrain from any type of employment outside of restrictions as indicated above.

Tr. 904.

On the same date, Dr. Moser completed a questionnaire prepared by Money's attorney. It provided a general description of the full range of sedentary work and asked Dr. Moser whether he thought Money could perform such work on a sustained basis. Dr. Moser marked the "NO" box, but provided comments indicating that Money could perform modified sedentary work with limited standing and walking consistent with his letter. Tr. 907.

Money argues that Dr. Moser's opinion compels a finding of disability. This ignores the plain language of his statements. Dr. Moser indicated that with proper limitations on standing and walking, Money can perform sedentary work. The ALJ adopted the limitations in Dr. Moser's opinion in hypothetical limitations posed to the VE and the VE identified sedentary work that would accommodate those limitations. The ALJ's interpretation of Dr. Moser's opinion is entirely reasonable and the court should not disturb it, even if Money proposes another interpretation. *Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995).

### III.    Nurse Practitioner Pepper's Opinion

Money established treatment with South Lane Mental Health (SLMH) on January 29, 2001. Money reported depression for years related to a history of domestic abuse and more recent depression related to medical and financial problems. She was oriented and denied hallucinations

10 - FINDINGS AND RECOMMENDATION

or delusions. Tr. 487-89. After the initial visit, Money saw Brook Shafer, LCSW, for counseling, individual skills training, assistance completing social security forms and advocacy in her search for housing.

Money saw Pepper for medication management on February 6, 2001, when Pepper described her as direct and somewhat anxious, but clear and oriented with organized and consistent thoughts. Tr. 482. Pepper next saw Money for medication management in November 2001 and signed a status report dated November 27, 2001. Tr. 484-86, 625. Since there is no record that Pepper saw Money during the 10-month interim, the report is presumably based primarily on counseling visits with Shafer, who also signed the status report. Tr. 486.

Money reported symptoms including anxiety around men and authority figures, anxiety related to health and finances, depression, nightmares, insomnia and difficulty understanding things. The status report included a diagnosis of depression, posttraumatic stress disorder and severe psychosis, but there is no indication that the diagnosis was made by a psychologist, psychiatrist or physician. Tr. 484-86.

Pepper saw Money again after eight months on July 24, 2002, for medication management. Tr. 618. She had individual therapy with Money on August 6, August 28 and September 17, 2002. Tr. 616, 617, 685.

On September 23, 2002, Pepper responded to a request from Money's attorney with a letter that included the following:

> I believe her mental condition limits her vocational options. It would present a hardship - and perhaps a decompensation in status, if she were placed in an eight-hour work situation. Her ability to encode instructions is limited, as well as her ability to deal with stress. Maintaining time commitments would be quite difficult.

11 - FINDINGS AND RECOMMENDATION

Tr. 630.

The Commissioner concedes that the ALJ failed to properly evaluate Pepper's opinion in both previous decisions. Money argues that Pepper's opinion supports an immediate award of benefits.

Only "acceptable medical sources" can establish the existence of a medically determinable impairment, offer medical opinions or be considered treating sources whose opinions can be given controlling weight. 20 C.F.R. §§ 404.1513(a), 416.913(a); 404.1527(a)(2), 416.927(a)(2); 404.1502, 416.902; 404.1527(d), 416.927(d). Evidence from other sources, including nurse practitioners, can be used to show the severity of an established impairment or how the impairment affects the claimant's ability to function. SSR 06-03p.

There is no evidence from an acceptable medical source to establish the existence of the diagnosis that Pepper's opinion is based on. Pepper relied on Shafer's assessment that Money suffers from "severe psychosis." Because the record does not establish the existence of this impairment, it would be an improper exercise of the court's discretion to credit as a matter of law Pepper's opinion regarding it's severity. Instead, the court should remand for further proceedings in which the Commissioner may develop the record regarding Money's mental illness through a consultative psychological evaluation pursuant to 20 C.F.R. §§ 404.1512(e), 416.912(e).

### IV.    Credibility of Plaintiff's Testimony

In March 2003, Money testified that she worked full time as a maintenance worker at Burger King. Her employer always told her she did a great job. Dr. Ahsan, her primary care physician before Dr. Bost, gave her light-duty work limitations. She was laid off for lack of work.

12 - FINDINGS AND RECOMMENDATION

Money takes the bus to her medical appointments. All the bus drivers know her. She does not go out of the house very often. Money testified that she feels tired and has to lie down after being up for four hours. She used to do beadwork for two to four hours at a time until she lost interest in the hobby. While she was up and active doing maintenance work at Burger King, she needed to rest periodically for 15 minutes. Doing beadwork at home did not make her feel like she needed to rest.

Money testified that she did not think she could do a sedentary job because her "legs go to sleep." Tr. 64. She was unable to attribute this symptom to any medical condition. She also said "I space out so I wouldn't get too much work done." Tr. 65. Money testified that she does not always change her clothes or bathe. Tr. 67.

In April 2005, Money testified that her hands and wrists ache for about 10 minutes after doing the dishes. Tr. 954-55. Her legs swell, but she takes medication for it and does not elevate her legs. Tr. 956-58. She has angina about twice a week for 10 minutes and nitroglycerine pills usually help. Tr. 963-64. Money testified that she sometimes bathed infrequently. Tr. 955. She was taking antidepressant medications which seemed to help somewhat. Tr. 955-56. She testified that she did not know if she would be able to do a full-time sedentary job because she could not keep her mind on things. Tr. 958.

The Commissioner concedes that the ALJ repeated the errors identified in this court's remand order when evaluating Money's testimony. In the first administrative decision, the ALJ articulated six reasons for finding that Money's testimony lacked credibility: her lack of custody of her children and perceived inconsistencies in reports about her ability to drive, her care for animals,

13 - FINDINGS AND RECOMMENDATION

her activity level, her use of public transportation and her use of alcohol. Tr. 22-23. The court found these reasons less than clear and convincing. Tr. 822-26.

The Commissioner concedes that the ALJ relied on the same reasons in the second decision, but also articulated additional reasons that provided a sufficient legal basis for discounting Money's testimony. Money argues that the ALJ's new reasons are legally inadequate and that the ALJ's reliance on the reasoning rejected by the court warrants an immediate award of benefits.

It is not necessary for the court to evaluate the ALJ's reasons for rejecting Money's testimony for the purposes of the present motion for remand. Money's testimony does not support an immediate award of benefits because it does not establish that she is unable to perform any kind of work due to medically determinable impairments. Her assertion that she tends to tire easily could reasonably be related to a level of activity exceeding sedentary work. The VE testified that her carpal tunnel symptoms would not preclude all sedentary occupations.

The other limitations in Money's testimony, *viz.* having her legs go to sleep, spacing out, taking long naps and practicing poor hygiene, are not clearly related to any medical condition established by the record. Money suggests that some of these symptoms have a psychological basis, but this appears to be purely speculative. Nothing in the record connects these symptoms to her mental health or any other medically determinable impairment. The Commissioner may address the potential psychological basis for these symptoms with a consultative psychological evaluation.

In the proceedings after remand, the Commissioner must make findings that identify specific testimony that is not credible and specific evidence showing why the specific assertions are not credible. A general assertion that Money is not credible will not be sufficient. *Dodrill v. Shalala*,

12 F.3d 915, 917-18 (9th Cir. 1993); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

### V.    Credibility of Michael Money's Testimony

Money's husband testified that Money does not do a good job on household chores. For example, she does not get the dishes clean and burns food when she cooks meals. She has had a rough life and is slow to pick up on things. She has difficulty handling money and remembering what to buy at the grocery store. She appears depressed, is a poor conversationalist, does not visit friends and is not interested in doing things. He must remind her to bathe.

The Commissioner concedes that the ALJ repeated the errors identified in the court's remand order when evaluating Mr. Money's testimony for the second decision. In the first administrative decision, the ALJ identified three reasons for discounting Mr. Money's testimony; the ALJ noted perceived inconsistencies between his description and other reports of Money's ability to drive, personal hygiene and activities around the home. Tr. 23-24. The court found the ALJ's reasons for discounting Mr. Money's testimony insufficient. Tr. 827-29.

The Commissioner apparently concedes that the ALJ's evaluation of Mr. Money's testimony in the second decision was also insufficient. Money contends that Mr. Money's testimony should be credited as a matter of law and that doing so compels an immediate award of benefits. Even if the court could credit Mr. Money's testimony, it would not establish that Money is unable to perform any kind of work.

As with Money's own testimony, the record does not show that the limitations Mr. Money described are related to any medical or psychological condition. In proceedings after remand, the

Commissioner may address the possibility that these limitations have a psychological basis by obtaining a consultative psychological evaluation.

### VI.     Remand

The court acknowledges that the Commissioner's repeated errors have resulted in extensive delay in this case. Under such circumstances, the court is hesitant to increase that delay by ordering additional proceedings. Here, however, the record is insufficient to support a determination of disability. Accordingly, the rare circumstances in which the court may avoid a remand to the agency for additional investigation or explanation are not present. *See Benecke*, 379 F.3d at 595; *INS v. Ventura*, 537 U.S. at 16; *Florida Power & Light Co. v. Lorion*, 470 U.S. at 744; *Moisa v. Barnhart,* 367 F.3d at 886-87.

Because further proceedings will be useful and the record requires further development regarding Money's functional limitations, an immediate award of benefits would not be appropriate. *Rodriguez v. Bowen,* 876 F.2d at 763.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

### RECOMMENDATION

For the reasons set forth above, the Commissioner's motion for remand (docket # 19) should be granted. The Commissioner's decision should be REVERSED and REMANDED pursuant to sentence four of 42 USC § 405(g) for further proceedings before a different ALJ consistent with these findings.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due February 6, 2007. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

DATED this 22nd day of January, 2007.

      /s/ Paul Papak
Paul Papak
United States Magistrate Judge

17 - FINDINGS AND RECOMMENDATION